Jabez Rogers *vs.* E. W. Judd et al.

A. acquires no property in wood and timber by their floating in the water over his land. But A. has an *exclusve* right to seize wood, and timber, floating and moving in an Eddy, over his land; and to convert such wood, and timber to his own use; unless the owner in a reasonable time claims the same.

If B. who is not the owner, seize wood and timber, floating in an eddy, over the land of A., this is more than a trespass upon the freehold; it is a violation of A's *exçlusive* right to seize the wood and timber himself; and in an action of trespass for this injury, the plaintiff should recover the *value* of his chance to seize, and enjoy the wood and timber, which *chance* he had lost by the seizure made by B.

This was an action of trespass *quare clausum fregit*.

Plea 1st. General Issue, 2dly, As to the digging and quarrying, a licence. Action tried December Term, 1832.

On the trial of the issue the plaintiff gave in evidence a deed from Gamaliel Painter to himself, dated September 19, 1791, of about 8 acres, including a part of the Eddy so called in Otter Creek, immediately below the falls in Middlebury, and also the land where a certain Still House and Potash, afterwards erected by the plaintiff stood. He also gave evidence tending to show, that for many years after the execution of said deed, the plaintiff was in the yearly practice of taking from the Eddy large quantities of flood-wood which floated down the Creek and remained floating in the Eddy, which was used by the plaintiff in his said Still House and Potash, as well as for fire-wood at his Dwelling House, and other purposes; and also saw-logs which had floated from the owners, many of which were never reclaimed. He also proved that the defendants Judd & Harris, had on various occasions during the period stated in the declaration, taken out of the said Eddy considerable quantities of wood and logs which were found floating there and appropriated them to their own use.

The defendants thereupon gave in evidence a mortgage deed executed by the plaintiff to Tooker and Mead dated in August 1811, of " *the land on which said Still House and Potash stood, and three rods round in every direction, together with the privileges and appertenances thereto belonging*. And also a record of a foreclosure of said Mortgage by action of ejectment, and a writ of possession executed in February 1815. The defendants also showed

ADDISON,
January,
1833.

Rogers
vs.
Judd et al.

a chain of deeds bringing down the title of Tooker & Mead under said Mortgage and foreclosure to themselves. They also gave evidence tending to show that from February, 1815, to the present time, those who had occupied said Still House and Potash under said deed had exercised the right of taking floodwood &c. from said Eddy as they had occasion. It also appeared that the plaintiff had exercised the same right upon his adjoining land. It appeared that the Distillery had not been carried on for many years past, but that the Potash was still continued.

It appeared the waters of the Creek covered a part of said land conveyed to the defendants at the north-easterly part of said Eddy, but whether the waters flowed within the three rods at any other place, and if so, how far, was a subject of controversy. The plaintiff claimed that by his deed from Painter he owned a part of the land under the waters of the Eddy which was not within the three rods from the Potash.

The defendants also introduced evidence tending to show that the floodwood &c. taken by them was taken on their land, or at least where the waters of the Creek came in contact with their land; and the plaintiff introduced evidence tending to show, that a considerable portion thereof was taken on his the plaintiff's land. The counsel for the defendants contended, and requested the Court so to charge the jury, that the plaintiff had no property in the floodwood and timber floating in the Creek and could not recover for taking, and that he could recover damages only for the injury done to him in going upon his land. The Court refused so to charge the jury, but did charge,

That neither party is the owner of wood, timber &c. floating in the Eddy over his land, but *has a chance there to take up such property, and finally to enjoy it.* And each party has a right to take it over his own land if he chooses to exercise that right. That they would first enquire as to the defendants boundaries, whether the three rods came in contact with the water, and how this was from November, 30, 1824, to November 30, 1830. That if they found both parties owning land extending into the water at the several times of taking wood &c. which appears to have been in times of high water, then the Court consider that each

Addison,
Jauary,
1833.

Rogers
vs.
Judd et al.

party had the better right as against the other of taking up what came to or upon his land if he chose so to do, and in this view, the defendants would not be liable except for what they took, if any, by going beyond their three rods.

That if they found that the three rods did not reach the water at the several times of taking between Nov. 30, 1824, and Nov. 30, 1830, then the defendants would have no right to take up at all *if the plaintiff signified his choice to do it and would actaally have done it.*

But if the defendants did go beyond the three rods to draw in the timber &c. and no adverse right of doing so was acquired by 15 years use, plaintiff was entitled to recover in respect of what was taken by going beyond the three rods.

On the subject of damages the Court charged as follows, and no further, viz: "If you find the plaintiff entitled in this part of the case, yet his damages are to be estimated by keeping in mind the right of the owners above, of pursuing and claiming their wood, timber, &c. It was the chance of enjoying what shall not be pursued and claimed" which they were to consider. Evidence was given as to the quantities of marble, stone, &c. dug and taken by defendants on the plaintiff's land—and evidence to prove and disprove the plaintiff's licence therefor—but no question reserved on that part of the case.

Verdict and judgement for the plaintiff. And to the refusal of the Court to charge as requested, and to so much of the charge as above stated—the defendants excepted. Exceptions were allowed, and the case now comes here for revision.

*Phelps & Bell for defendants.*—1st. The defendants contend that as plaintiff had no title to or interest in the flood-wood in question, he ought not to have recovered for taking the wood.

2d. If the plaintiff had a sort of contingent interest in the wood, yet if the defendants owned lands on the Eddy, they had an equal interest, with the same right to take the wood; and the mere fact of taking it across the plaintiff's land would not entitle him to recover for it.

29

ADDISON,
January,
1833.

Rogers
vs.
Judd et al.

*H. Seymour for plaintiff.*—The Court were correct in refusing to charge the jury that the plaintiff could not recover for the floodwood, &c. on the ground that he had no property in the same.

The action is trespass, and the possession of the plaintiff was sufficient for him to maintain his action against the defendants, who were mere trespassers without pretence of title.

The property taken by the defendants from the eddy floating over the land of the plaintiff, was the property of the plaintiff, subject to the claim of the owners, should it be identified, and claimed by them ; and the plaintiff must be regarded as the first possessor. 2 Black. 402, 2d. Sec.

The deed of the Distillery and Potash, with the three rods around must be construed as confining the grantees, and those claiming under them to three rods ; and the Court charged correctly, that if these three rods extent did not reach the water, the defendants had no right to take wood, &c. from the water, if plaintiff manifested a disposition to take it therefrom, unless defendants had acquired a right to take it by 15 years using.

The opinion of the Court was delivered by

BAYLIES, J.—Neither party in this suit was the owner of the wood and timber in question, while floating, and moving from place to place in the eddy. But each party had the exclusive right to seize all such wood and timber, while floating and moving over his own land, and to take it out of the water for his own use ; and if the owner did not claim such wood and timber in a reasonable time, the the same would become the property of the captor by occupancy.—(2 Black. Com. 402.) If the defendants, to secure the wood and timber, which they had lawfully seized floating over their own land, drew the same across the land of the plaintiff, this would not subject the defendants to pay the plaintiff for such wood and timber ; but they might be liable for *trespass* upon the plaintiff's freehold. In such case the damages would probably be small. But if the defendants seized the wood and timber, while floating over the plaintiff's land, and drew it out of the water to convert to their own use, this was more than a *trespass* upon the free-

ADDISON,
January,
1833.

Rogers
vs.
Judd et al.

hold. It was a violation of the plaintiff's *exclusive right* to seize the wood & timber in that situation. In assessing the damages for this violation, it is for the jury to find, what the pl'ff *lost* by the defendants' infringing his exclusive right. The pl'ff did not lose the wood and timber, for these were never his; but he lost the *chance* of seizing the wood and timber on his own land, & converting them to his own use, if the true owner did not prevent it. The jury should enquire what this *chance* was *worth* to the plaintiff, for so much he *lost*, by the defendants' *trespass*.

If the plaintiff's *chance* to seize the wood and timber was *positively* certain, the *value* of this *chance* was much less than the *value* of the wood and timber on the land—the plaintiff having absolute property in the same : the difference was the expense of seizing and drawing the wood and timber out of the water upon the land, and the.risk of losing the same by the owner. But the plaintiff's *chance* to seize was not *positively* certain ; but depended upon contingencies, which rendered his *chance* uncertain, and lessened its value. If the defendants had not seized the wood and timber, when they did, the water might have carried them out of the eddy, and the plaintiff would have *lost* his chance to seize. This contingency of water carrying wood and timber out of the eddy had happened, and might again, which rendered the plaintiff's chance to seize in some degree uncertain, and of less value.

In high water, as often as once in every ten or fifteen minutes, wood and timber in the eddy form a complete circle, which is partly over the defendants' land, and partly over the plaintiff's land. Now if the defendants on their land, had as good a chance to seize the wood and timber in question, when floating in this circle, as the plaintiff had on his land, then the plaintiff's *chance* to seize, was lessened one half, and was worth only one half as much as it would have been, if the defendants had no *chance* to seize on their own land.

It was for the jury to have found the *value* of the plaintiff's *chance* to seize and enjoy the wood and timber, that were taken by the defendants on his land, and as they found the *value* of his *chance*, all circumstances considered, so should have been their verdict for damages, on account of the defendants' depriving the plaintiff of his *chance*.

ADDISON,
January,
1833.

Rogers
vs.
Judd et al.

Upon the above principles the cause should have been submitted to the jury ; but the Court so charged, that the jury might understand that they were to assess damages for the plaintiff according to the value of the wood and timber seized by the defendants, on the plaintiff's land, and not pursued and claimed by the owners. If this was the meaning of the charge, it was not according to the principles which we consider to be correct : therefore, the judgement of the County Court is reversed, and a new trial granted.