IN THE

# SUPREME JUDICIAL COURT,

FOR THE

## COUNTIES OF WASHINGTON AND AROOSTOOK,

### 1849.

## Brown *versus* Chadbourne.

The rule of the common law, that riparian proprietors own to the thread of fresh water rivers, has been adopted in this State.

A stream, which, in its natural condition, is capable of being commonly and generally useful for floating boats, rafts or logs, for any useful purpose of agriculture or trade, though it be private property, and though it be not strictly navigable, is subject to the public use, as a passage way.

Though the adaptation of the stream *to such use* may not be continuous at all seasons, and in all its conditions, yet the public right attaches, and may be exercised whenever opportunities occur.

When a stream is inherently, and in its nature, capable of being used for the purposes of commerce, for the floating of vessels, boats, rafts or logs, the public easement exists.

In such a stream, the right in the public exists, notwithstanding it may be necessary for persons floating logs thereon, to use its banks.

Where the proprietor of such a stream, by means of a dam and of an accumulation of his logs above the dam, has, under claim of a right to control the stream, designedly obstructed the running of the plaintiff's logs, and refused to make any provision for the passage of them, the plaintiff is justified in repairing and opening the proprietor's sluices around the dam, for that purpose; provided that that be the mode of effecting the object, least detrimental to the proprietor.

In such a case, in a suit against the proprietor for such injury, the plaintiff may recover for the damage, and, among the items recovered, may be the expenses of booming the defendant's logs, and of repairing his sluices.

CASE for maintaining a dam across Little river, and thereby obstructing the passage of the plaintiff's logs. It is a fresh water river, three miles long, flowing from Boyden's lake to tide water. Its width varies from seven or eight feet to three or four rods. The defendant owns land on both sides of the river, and has a dam and mills there, and a large quantity of his logs were resting upon the dam. The plaintiff had a quantity of logs in the river, for the purpose of being driven to *his* mill, below the defendant's dam. But they were prevented from passing, by means of the mass of the defendant's logs above his dam. The defendant was requested to remove the obstruction, or provide some passage way for the plaintiff's logs, but declined to do so, insisting that the plaintiff had no right to drive logs on that part of the stream, and forbidding him to drive them. The plaintiff thereupon boomed the defendant's logs, and opened and repaired some old sluice ways, belonging to the defendant, around the dam, and drove his logs through the same.

To recover for the hindrances and expenses in getting his logs by the dam, the plaintiff brings this suit.

The defendant contended that, at the place where his lands lay, the river is wholly his property; that the public have no right of passing upon or using it, and that the plaintiff had no right to run logs there.

Before the case was committed to the jury, the plaintiff disclaimed any right arising from prescription or user by himself or others. But he insisted throughout, that, from the intrinsic capabilities of the river, any citizen had the right to use it for running logs.

Upon the question as to the character and capabilities of the river, much testimony was introduced by both parties.

It appeared from the evidence that, in order to drive logs on the river, the banks were commonly entered upon and used by the persons employed, and that, in some states of the stream, dams are necessary, in order to obtain sufficient water for floating the lumber.

At the trial before Wells, J., among other requests, (which had become immaterial, by reason of the plaintiffs disclaiming any rights from user or prescription,) the defendant requested the following instructions to be given to the jury.

1. That this being a fresh water stream, the presumption is, that it is private property, and that the burden is on the plaintiff to establish the contrary, by satisfactory proof that it is a navigable or floatable river.

2. To constitute Little river a navigable or floatable stream, it must be shown to be capable, in its *ordinary* and *natural* state, of floating logs, boats and rafts ; and it is not enough to prove that logs *may* be carried down at *certain seasons* of the year, when the stream is raised by a *freshet*.

3. If it appears that dams or artificial means are necessary, in order to float down logs, or that it was necessary to clear the stream of natural obstructions, before logs could be driven, the jury are not at liberty to find that the plaintiff had a right to use the river.

4. The plaintiff has no right to use the *banks* of this stream for driving logs, and therefore, if such use is necessary for driving logs, the plaintiff has no right to drive the stream.

5. If it should be held, that this stream is a navigable one in time of freshet, and thus, at such times, a common highway ; but not capable, in its ordinary state, of floating logs, the plaintiff would have no right to use it as a highway, except in times of freshet ; and if, at the time alleged in plaintiff's writ, the stream was in its ordinary condition, and not capable of floating logs, he cannot recover.

6. The defendant's prohibition to pass his dam, having been disregarded by plaintiff, is no ground for the recovery of damages, nor is the fact that defendant's sluices were out of repair; and if it is found that the plaintiff took the power into his own hands, and by forcible means carried his logs by the defendant's dams, he cannot recover in this action.

7. The plaintiff cannot, in this action, recover for money expended in booming the defendant's logs or repairing his

sluices, nor for any other obstruction than that, occasioned by defendant's dams.

8. The plaintiff cannot recover for any obstructions occasioned by defendant's logs, unless he shows that defendant had a reasonable time after they were driven to his pond, to boom or remove them, and that he refused to do it.

The second, fourth and fifth requested instructions were refused, the first and third were given. The first clause of the sixth was given, and the residue of it refused. The seventh and eighth were given with the qualification that, if Little river was found to be a public stream, each one must use it so as not wilfully and intentionally to obstruct it; that if the defendant filled the stream for the purpose of preventing the plaintiff's passage with his logs, and there was no way of getting by, but by removing the defendant's logs, the plaintiff might, under the declaration in this writ, recover the expense of removing them.

In relation to damages, the jury were instructed, that if Little river was a public stream, no one, but by authority of law, could obstruct it, and plaintiff would have had a right to cut away the defendant's dam, if he could not otherwise run his logs; but if it was the best and cheapest mode of getting by the dam, and less damage to defendant would be done by repairing defendant's sluices and using them, the plaintiff might make repairs on them and recover the expense in this action; that the defendant had an equal right with the plaintiff to put his logs into this stream, and plaintiff could not recover for the detention, occasioned by defendant's logs, if both parties acted fairly, and in that case, plaintiff could not recover for removing the logs of the defendant; but if the defendant insisted upon a right to control the stream, and filled the stream with his logs, to obstruct the plaintiff's logs, then the plaintiff might, in this action, recover for his expenditures in the booming of defendant's logs; that the declaration in the writ was sufficient to authorize the recovery of such damage.

The Judge further instructed the jury that it was unallow-

able to hold that streams, merely because capable of being used only in times of freshet, are therefore private streams; that though the jury were satisfied that Little river was capable of being used for running logs in times of freshet only, that circumstance would not prevent it from being a public stream, although in the ordinary state of water, it was not sufficient for such purposes; that, if it was necessary to go on the banks more or less for the purpose of driving logs in Little river, that fact would not take from the stream its public character, if they found it capable in other respects of being used as a public stream; that, with regard to the removal of obstructions from this stream, it must appear that the stream in its natural condition was capable of being used for running logs; and that if what had been done in removing obstructions had only *improved*, but did not *create* the capability, the public right would not be impaired by such improvements.

The verdict was for the plaintiff for $350, and the defendant excepted.

*D. T. Granger*, for defendant.

The *fresh water* rivers in this State, that are of public use, owe that character to prescription. *Spring* v. *Chase & al.*, 2 Dane's Abr. 696, chap. 68, a. 4, § 2.

But if in some countries, the public right be original and inherent in such rivers as are of sufficient volume to be, *in fact, navigable;* such right has been modified in this State and Massachusetts.

The right of erecting dams and mills, and thereby obstructing such fresh water rivers, has been long recognized, and has become a common law right.

Of such public importance is the milling interest regarded, that it has always been the policy of the law to favor and protect it, as only great public interests have been. Ancient Charters, p. 388, chap. 98, p. 404, chap. 111. PARKER, J. in *Edson* v. *McMaster*, 1 Kerr. 501; Massachusetts Acts of 1796 and 8, vol. 2, p. 729 and 814; Acts of Maine, chap. 45, 261

and 437 ; Rev. Stat. chap. 126 ; Shepley, in argument in *Berry* v. *Carle*, 3 Greenl. 269 ; Sullivan's Land Titles, p. 276.

The evidence shows that Little river is of importance for milling purposes, but of none or of very trifling value as a way.

The law recognizes a class of rivers, which are private, the property of individuals, and not subject to public use. The doctrine contended for by plaintiff, annihilates such a class.

The declaration claims for obstructions by dams and not by logs.

*S. Greenleaf*, of Massachusetts, on the same side.

By common law, the entire property in Little river, its banks and bed, is in the riparian proprietors. They are entitled to control its use at their pleasure. If the public have any ease-ment or service therein, the burden of proof is in the plaintiff to establish it. *Hale de jure Maris*, chap. 1 ; 6 Cow. 537 ; Angell on Water Courses, chap. 7, § 1, p. 201, 202 ; Schutts on Aquatic Rights, p. [136] ; *Wadsworth* v. *Smith*, 2 Fairf. 281.

It is not a navigable river ; this term is applicable only to tide waters, and it is such rivers only, that are public rivers. Angell on Tide Waters, p. 73—79, 2d ed. and cases.

The public right to the use or service of fresh water rivers, depends on their general character and fitness, *at all seasons* of the year, in their natural state, for the passage of boats and the transportation of property.

Small streams not answering this description, are exclusively and entirely private property.

To hold that a river or stream becomes public during a freshet, is to admit that it is private while there is no freshet, a doctrine both dangerous and unsound : — dangerous, be-cause it leaves the rights of parties in confusion and uncer-tainty : — unsound, because it gives to one, a way over another's land, whenever it is highly for his advantage ; and because of the unlimited and mischievous extent to which it goes in its application.

In order to make even tide waters navigable, so as to entitle the public to use them freely, they must be navigable to some useful purpose of trade or agriculture ; not only at times of extraordinary flood, but at all times of the year, and in the ordinary state of the water.

The known differences of opinion, as to the extent of the term navigable, and whether it applies to fresh water rivers, relates only to the ownership of the bed of the river, or to the exclusive right of fishing, and not to the point now in issue. But even in this respect, the weight of authority is with the defendant.

But the right of the public to use navigable waters, does not give them any right to travel on the banks ; this right must result from grant or prescription. The right of the State is restricted to the shore ; that is, the land that is usually overflowed at ordinary tides. *Ball* v. *Herbert*, 3 T. R. 253 ; *Bird* v. *Smith*, 8 Watts, 234 ; *Morgan* v. *Reading*, 3 ; *Smead* v. *Marsh*, 366 ; also *Scott* v. *Wilson*, 3 N. H. 324, 325.

The same doctrine applies to public fresh water streams. Rivers and streams, therefore, which cannot be used for boating and for floating lumber, without traveling upon the banks, are not among public rivers or ways.

To give them this character, they must be capable of being used for valuable purposes of trade or agriculture, at all times and without any aid or appliances from the bank. *Berry* v. *Carle*, 3 Greenl. 269 ; *Wadsworth* v. *Smith*, 2 Fairf. 280, 281, *quod nota; French* v. *Camp*, 6 Shepl. 434.

Whether this public right in fresh water rivers, is original and inherent, or dependent on long usage, is a question not settled, but involved in no little uncertainty. In the New England States, the chief stress is laid on usage and custom, as its sole foundation. 3 Greenl. 273 ; 3 N. Hamp. 325.

Little river, then, is only one of those little streams, mentioned by PARRIS, J. in *Wadsworth* v. *Smith*, 2 Fairf. 281, which are not floatable, &c.

It is also respectfully insisted that there was error in the refusal of the Judge to instruct the jury that, to constitute it a public river, it must be capable to float logs and to be used for purposes of boating, and in its ordinary and natural state, and not in times of freshet alone; that the plaintiff had no right to use the banks of the stream, and that if such use was necessary to the use of the water, the plaintiff had no title to it as a public river; and that, if the river at the time alleged, was in its ordinary state, and not capable of floating logs, the plaintiff could not recover.

Our view is, that the jury should be instructed to inquire whether the river, in its natural state, was capable of being used for the passage of boats, rafts and logs, *at all* seasons, and all states of the water, and this without the necessity of any resort to the banks, either for towing paths or other purposes; in which case only would it be, in its character, a public river.

The jury were instructed, that, if the passage of the plaintiff's logs was unlawfully obstructed in the river by the defendant, then the plaintiff had a right to convey them, over the defendant's land, and through his sluices, which were confessedly his private property, and might recover the expense of putting the sluices in order for that purpose.

But this, it is conceived, is not quite correct. For, to justify going over private property, in order to avoid an obstruction in a public highway, it must appear to be insurmountable.

If the defendant's dam unlawfully obstructed the river, and the river was public, the plaintiff should have cut away the dam. It is not for the plaintiff to say, that the course he took was less expensive to defendant.

*T. J. D. Fuller,* for plaintiff.

1. The rights of private property, in fresh water rivers, above the tide, is held in servitude to the *jus publicum.*

If Little river was naturally of sufficient size, to float boats or mill logs, the public have a right to its free use, for that purpose, unincumbered with dams, sluices, or tolls.

The law nowhere defines the character of a stream, by admeasurement of its volume. The true inquiry is, can the stream be used, for floating logs, boats and rafts on its surface ? That Little river is of this description, is settled by the verdict.

The position, that a stream, in order to be subject to the *jus publicum*, must, at its ordinary and natural pitch of water, independent of spring freshets, be of sufficient magnitude, to float boats and logs, is not sound.

The quantity of water flowing in a stream, is ever varying, dependent on atmospherical influences. The spring freshets on our streams, come as regular as the budding of the trees, only varying in degree. Many of the great rivers of the *West*, upon which float hundreds of steamboats, are said to be fordable by footmen at certain seasons of the year.

This great common law right, of using as a public highway, all the streams in this State, susceptible of floating a log to market, lies at the bottom of the public prosperity. The hundreds of small streams, which our lumbermen annually ascend, for winter operations, and which in the freshet season, bear back to market the fruits of their industry, ought to be public highways.

It may be difficult, in some instances, perhaps, to define the precise points, on the streams, which converge into rivers, where this public highway ceases.

But we contend for the broad common law doctrine, that any stream, which at any season of swollen floods, can be practically and profitably used, in floating logs to market, is a public highway. 21 Pick. 344.

But this case is relieved from any question of this sort. The source of Little river is not from small springs. It is the natural outlet of Boyden's lake.

2. The defendant's position, that the public have no right to drive logs upon the stream, if in doing it, there is a necessity to use the banks, is unsound. It proves too much, for in our largest rivers, logs are lodged upon the banks.

To use the banks, and to go upon the banks, for the purpose of removing lumber, lodged there, is a right incident to the way. 5 Pick. 199, see p. 202.

Our statute, chap. 67, fully recognizes this right, and by highly penal provisions, protects the owner of such property, thus situated, against trespassers upon it, " lying and being, in any river, pond, bay, stream or inlet, or on, or near, the bank, or shore thereof."

Here is no distinction, as to the size of the stream or inlet. This statute is a legislative sanction, to the right of using, as common highways, all streams or bodies of water, which may be used for floating logs.

3. Damages.

If a party abate a nuisance himself, he shall not have his action of damage, for that is his remedy. Chap. 13, 3 Black. p. 220.

But the party injured, may have his remedy, for his damage, before abating it.

The defendant's dam constituted the nuisance. The plaintiff did not abate it. 21 Pick. 344.

It is alleged in the declaration, and the evidence tended to prove, that defendant acted maliciously, that is, he did more than the obstructions in and of themselves would do, to injure the plaintiff, by oppressively and wantonly hoisting his gates, to draw off the water, and thereby preventing the plaintiff from sluicing his logs.

Defendant ought not to complain of the plaintiff, for sluicing the logs, which was a course least hurtful to the defendant.

WELLS, J. — This is an action on the case for erecting and maintaining a dam across a stream, called Little river, and obstructing the passage of the water, and the plaintiff's logs.

The river is about three miles in length and runs from Boyden's lake to the tide waters. It varies in its width, from seven or eight feet, to three or four rods, and it has been used

many years for floating logs and rafts, and sometimes boats. Within twenty years, several dams and mills have been erected upon it.

The plaintiff disclaimed the right to recover, upon the ground of prescription or user, but claimed it because the stream was a public one in its natural state.

The jury were instructed, that it being a fresh water stream, the presumption is, that it is private property, and the burden is on the plaintiff to establish the contrary, by satisfactory proof, that it is a navigable or floatable river, and in its natural condition, capable of being used for running logs.

The rule of the common law, that riparian proprietors own to the thread of fresh water rivers, has been adopted in this and many other States of the Union. *Berry* v. *Carle*, 3 Greenl. 269; *Spring* v. *Russell & al.* 7 Greenl. 273.

The first question that arises is, it being conceded that the bed of the river belongs to the owners of the land on either side, can a right to the use of its waters be obtained, unless that use has been continued twenty years, the ordinary length of time for the acquisition of an easement?

In *Berry* v. *Carle*, *Shaw* v. *Crawford*, 10 Johns. R. 236, *Scott* v. *Wilson*, 3 N. H. 321, the right is considered as dependent on long usage.

Lord Hale, in his celebrated treatise, *De jure Maris*, chap. 2, says, "for, as the common highways upon the land are for the common land passage, so these kind of rivers, whether fresh or salt, that bear boats or barges, are highways by water, and as the highways by land are called *altæ viæ regiæ*, so these public rivers, for public passage, are called *fluvii regales*, and *haut streames le Roy*; not in reference to the propriety of the river, but to the public use."

Again he says, in chap. 3, "there be some streams or rivers, that are private, not only in propriety or ownership, but in use, as little streams and rivers, that are not of common passage for the king's people. Again, there be other rivers, as well fresh as salt, that are of common or public use, for carriage of

boats and lighters. And these, whether they are fresh or salt, whether they flow and reflow or not, are *prima facie publici juris*, common highways for man or goods, or both, from one inland town to another. Thus the rivers of Wey, of Severn, of Thames and divers others, as well above the bridges and ports as below, as well above the flowings of the sea as below, and as well where they have come to be of private propriety, as in what part they are of the king's propriety, are public rivers, *juris publici.*"

He makes no mention of prescription or length of time, by which the right is obtained, but of the actual use in fact, as indicating public rivers.

In *Wadsworth* v. *Smith*, 2 Fairf. 278, the doctrine is stated by PARRIS, J. that where a stream is naturally of sufficient size to float boats or mill logs, the public have a right to its free use for that purpose. But such little streams or rivers as are not floatable, that cannot, in their natural state, be used for the carriage of boats, rafts, or other property, are wholly and absolutely private ; not subject to the servitude of the public interest, nor to be regarded as public highways, by water, because they are not susceptible of use, as a common passage for the public.

The same principle was stated by MELLEN, C. J. in *Spring* v. *Russell & al.* And is also recognized in Angell on Tide Waters, 75. *Palmer* v. *Mulligan*, 3 Caines, 307.

The distinguishing test between those rivers which are entirely private property, and those which are private property subject to the public use and enjoyment, consists in the fact, whether they are susceptible, or not, of use as a common passage for the public. Per SPENCER, C. J. in *The People* v. *Platt*, 17 Johns. R. 211 ; *Hooker* v. *Cummings*, 20 Johns. R. 90.

The right of passage and of transportation upon rivers not strictly navigable, belongs to the public, by the principles of the common law. Per PARKER, C. J. in *Com.* v. *Chapin*, 5 Pick. 199.

This subject was very fully considered and with great abil-

ity, in *Ersing* v. *McMaster*, in the Province of New Brunswick, 1 Kerr, 501, deciding the rule of law, as it is stated to be in *Wadsworth* v. *Smith*. The case of *Rowe* v. *Titus*, 1 Allen, 326, in that Province, was decided upon the same principle.

It is said, in *Adams* v. *Pease*, 2 Conn. 481, that the public have an easement in Connecticut river, above the flowing of the tides, for passing and repassing with every kind of craft, and that all rivers, above the tides, in reference to the use of them, are public, and of consequence subservient to public accommodation. Hence fisheries, ferries, bridges, and inland navigation are subject to the regulation of the government.

In Pennsylvania it is held, that the large fresh water rivers, in that State, are altogether public ; not only their waters, but their beds. This conclusion is drawn from the inapplicability of the rule of common law, to large rivers ; also from the fact that neither the original proprietors, nor the government have ever granted them to individuals. *Carson* v. *Blaney*, 2 Binney, 475 ; *Shrunk* v. *Schuylkill, Nav. Com.* 14 S. & R. 71.

If a stream could be subject to public servitude, by long use only, many large rivers in newly settled States, and some in the interior of this State, would be altogether under the control and dominion of the owners of their beds, and the community would be deprived of the use of those rivers, which nature has plainly declared to be public highways. The true test, therefore, to be applied in such cases, is, whether a stream is inherently and in its nature, capable of being used for the purposes of commerce, for the floating of vessels, boats, rafts or logs. When a stream possesses such a character, then the easement exists, leaving to the owners of the bed, all other modes of use, not inconsistent with it. For in this State, the rights of public use have never been carried so far, as to place fresh water streams on the same ground as those in which the tide ebbs and flows, and which alone are considered strictly navigable at common law, and to exclude the owners

of the banks and beds from all property in them. In some of the States of the Union such a rule has been established by judicial decisions, and in others by legislative acts.

It is contended, that to show Little river is public, it is not enough to prove that logs may be floated down at certain seasons of the year, when it is affected by a freshet, but that it should have that capacity in its natural and ordinary state, at all seasons of the year.

In the test, which has been mentioned, to determine whether a stream should be considered public, none of the authorities, from which it is derived, requires the stream to possess the quality of being capable of use, during the whole year. A distinguishing criterion consists in its fitness to answer the wants of those, whose business require its use. Its perfect adaptation to such use may not exist at all times, although the right to it may continue, and be exercised whenever an opportunity occurs. In many rivers, where the tide ebbs and flows, the public are deprived of their use for navigation during the reflux of their waters. A way, over which one has a right to pass, may be periodically covered with water. In high northern latitudes, most fresh water rivers are frozen over during several months of the year. Even some tide waters are incapable of any beneficial use for purposes of commerce in the season of winter, owing to the accumulation of ice.

Every creek or river, into which the tide flows, it has been held in England, is not on that account necessarily, a public navigable river. If it is navigable only at certain periods of the tide, and then only for a very short time, it is not to be supposed to be a navigable channel. Angell on Tide Waters, 89. Nor, as said by Shaw, C. J. in *Rowe* v. *Granite Bridge Corporation*, 21 Pick. 344, is it every small creek, in which a fishing skiff or gunning canoe can be made to float at high water, which is deemed navigable. But in order to have this character, it must be navigable to some purpose, useful to trade or agriculture. It is not a mere possibility of being used under some circumstances, as at extraordinary high tides, which

will give it the character of a public stream, but it must be generally and commonly useful to some purpose of trade or agriculture.

But those authorities, upon which reliance is placed, show nothing more than that small creeks or inlets, penetrating into marshes, and which can only be used at certain periods of the tide, and then only for a short time, or in which there is only a possibility of use, under some circumstances, at extraordinary high tides, are not navigable rivers. Such streams are incapable of any practical, general use for the purposes of navigation, and they are dissimilar to the river under consideration.

Most of the great rivers of this State, in some portions of their passage, are so much impeded by rocks, falls and other obstructions, that logs cannot be floated in them, any great distance, at what might be called an ordinary state of water. It is only in the spring and fall, and occasionally at other times, when their channels are filled with water, that they are capable of floating timber to market. They generally remain in this condition, a sufficient length of time to answer the purposes of a common highway, and their fitness and character as such cannot be destroyed, because they cannot be used in their ordinary state.

A test so rigid and severe, as that required by the instruction requested, would annihilate the public character of all our fresh rivers, for many miles in their course, from their sources towards the ocean. The timber floated upon our waters to market is of great value, and neither the law nor public policy requires the adoption of a rule, which would so greatly limit their use, for that purpose.

The right to the use of the stream in question, must prevail, whenever it may be exercised, at any state of the water.

Another instruction requested to be given was, that "the plaintiff has no right to use the banks of this stream for driving logs, and if such use is necessary for driving logs, the plaintiff has no right to drive this stream."

This request is manifestly too broad, and could not, with

propriety, be given. When the stream overflows its banks, it carries some of the timber with it, and when it subsides, the timber is left upon the uplands. But in such cases, the timber is not lost to its owners, who have a right by our law to enter upon the uplands and remove it. This subject has been regulated by statute, c. 67, § 11, by which the owners of timber may enter upon the land and remove it, within a certain time, by tendering to the owner or occupier of the land, a reasonable compensation for his damages. The banks of the stream may therefore be used for driving logs.

No request was made to instruct the jury, that if the stream was incapable of being used, without traveling upon its banks to propel the logs, there could be no public servitude in it.

The instruction given to the jury was, " that if it was necessary to go on the banks more or less, for the purpose of driving logs in Little river, that fact would not take from the stream its public character, if they found it capable in other respects, of being used as a public stream." It belonged to the jury to determine, whether the river possessed those requisites, which would give it the character of a public stream, and if they found it to be so, it could not be deprived of that character by the acts of those, who might use it. In narrow places, it might at times be blocked up, or it might, as has been stated, overflow. The necessity of going upon the banks in such instances to effect a floating of the logs, would not prevent the river from being public. The inquiry related to the capacity of the river, and that could not be altogether decided, by what those using it, might find necessary at times to do. Some might find it absolutely necessary in their mode of driving logs, to commit trespasses on the adjoining lands, but their unlawful acts could not affect the stream, if it was really and intrinsically capable of public use.

If the plaintiff and others were in the habit of going upon the banks of Little river to drive their logs, it does not appear but that they might have confined themselves to its waters, though it might be more inconvenient for them so to have

done. Their want of care in the use of the river, creating a necessity to commit trespasses, to relieve their property, would not prevent it from being public, nor justify the defendant in obstructing it. They would be responsible in damages for any trespasses committed.

The public are not entitled to tow on the banks of ancient navigable rivers, at common law. *Ball* v. *Herbert*, 3 T. R. 253. And where a river cannot be used without towing, or going upon its banks to propel what is floating, such fact would evince its want of capacity, in itself, for public use.

Sometimes the flow of rivers is broken by cataracts and falls, while in most of their course there is a smooth current, and they are of great utility in the transportation of property. Where such obstructions exist to so great extent, as to require the use of the shores, to carry property by them, though in those places they might not have a public character, yet for many miles above and below them, they might be capable of a beneficial use for trade and commerce, and thereby be public. These obstructions may occur at long or short intervals, leaving other portions of the streams clearly public.

It is further contended by the defendant, that if the dam was an unlawful obstruction, the plaintiff had no right to run his logs through the defendant's sluice, built on his land, and recover damages for repairing it, although such course would be less detrimental than the destruction of the dam, but that he should have cut away the defendant's dam.

If a man has a right of way over another's land, unless the owner of the land is bound by prescription or his own grant to repair the way, he cannot justify going over the adjoining land, when the way is impassable by the overflowing of a river, but if public highways are out of repair or impassable, as by a flood, there is a temporary right of way over the adjoining land. 2 Black. Com. 36; 3 Kent's Com. 424.

Those obstructions, which prevent a passage, while they remain, are insurmountable.

It is said by BULLER, J. in *Ball* v. *Herbert*, "that if a river

should happen to be choked up by mud, that would not give the public a right to cut another passage through the adjoining lands." The right of way is in the waters, and the defendant had no authority to prevent its exercise. He could, by law, erect and continue his dam and mills, but was bound to provide a way of passage for the plaintiff's logs. He obstructed the river improperly by his dam and logs. The plaintiff must either have left his property and lost its whole value, carried it by the dam, repaired the sluice and run the logs through it, or have removed such portion of the dam, as would have afforded a passage. He adopted that course, which was least injurious to the defendant.

The plaintiff would have had the right to enter upon the defendant's land to remove the obstruction. *Colburn* v. *Richards*, 13 Mass. 420; *Inhabitants of Arundel* v. *McCulloch*, 10 Mass. 70.

The plaintiff might not be bound to repair the sluice, but having done so to obviate the difficulty created by the defendant, there does not appear to be any reason, why he should be held to have taken that course, which would have produced a greater injury to the defendant. *Miller* v. *Mariner's Church*, 7 Greenl. 51.

The argument, that damages cannot be recovered for removing the logs, because the dam is alleged in the declaration to have caused the obstruction, cannot prevail, even if such construction should be given to it. For the dam stopped the water and retained the defendant's logs in his mill pond. The removal of it would have allowed a free passage to the logs in the pond, as well as those of the plaintiff. The dam was the cause of the injury ; its direct result was the detention of the water above it, and whatever might be in it. The necessity of a removal of the logs was a damage caused by the dam.

The defendant had a concurrent right with others in the use of the stream, but it appears that he transcended that right by filling his pond with logs, and refused to remove them upon request.

It may be difficult, in some cases, to draw the line between public and private streams. The jury have decided that Little river belongs to the former class, upon the exhibition to them of much testimony, by both parties. And there does not appear to be any sufficient reason why the verdict should be disturbed.

Both the motion for a new trial and the exceptions are overruled, and there must be judgment on the verdict.

See 6 Barbour's N. Y. Rep. 265.