COÖS.

---

CARTER *v.* THURSTON *& a.*

The navigability of a stream, for the purpose of bringing it within the denomination of a public river or highway, does not depend upon the mode by which commerce is conducted upon it, as whether by steamers, or sailing vessels, or boats, or rafts, nor upon the difficulties attending navigation; it depends upon the question. whether the river in its natural state is such that it affords a channel for useful commerce.

A person, properly using a public stream by floating logs upon it, is not responsible at common law to a riparian proprietor for damages occasioned by the stranding of logs on his land, if the owner or driver of the logs has used every reasonable effort to retain them within the stream.

If logs become thus stranded by accident, and without the fault of the owner
or driver, he may lawfully enter upon the land of the riparian proprietor,
for the purpose of reclaiming and removing his logs, doing no unnecessary
damage. If, in such reclamation, he inflicts unnecessary injury to the
land-owner, he will be responsible therefor.

A witness, acquainted with the land and its value, may state his opinion as
to the amount of damage occasioned by the hauling of logs over it.

TRESPASS, *quare clausum.* Facts found by a referee. The defend-
ants, with their servants, were engaged in driving a large quantity of
logs down Clear Stream, and into Androscoggin river at the mouth
of Clear Stream.

The plaintiff's land is situated on both sides of the stream, and is
all under cultivation. It is located about a mile and a half above the
mouth of the stream, and about eight miles below the land of the Ber-
lin Mills Co., from which the timber was cut by the defendants, under
a contract with the company. The defendants, by permission of the
company, used their dams for the purpose of assisting in driving the
logs. Clear Stream has been used in the spring, in times of freshets
and high water, more or less during the last thirty-five years, for the
purpose of driving logs. While the defendants were engaged in driv-
ing the logs, jams formed on the plaintiff's premises, which caused
some two hundred logs to run out and lodge upon the plaintiff's
meadow, where they were scattered over several acres upon both sides
of the stream, extending from the banks back about twenty rods.
The defendants tried to prevent and to break the jams, but were una-
ble to keep all the logs within the banks. The defendants removed
the logs from the plaintiff's premises, hauling the same by means
of oxen to the banks of the stream and rolling them in. The
usual method of reclaiming stranded logs is by " sacking" and rolling
them in with men, which would injure the grass much less than the
use of oxen. Upon the trial before the referee, the plaintiff was per-
mitted, against the defendants' objection, to show that the use of the
water, by shutting the gates of the dams and holding the water, and
then discharging it in unusual quantities upon the drives below,
forced the logs out upon the plaintiff's meadow.

The plaintiff was permitted to testify how much, in his opinion, his
meadow was lessened in value by drawing off the logs. To this evi-
dence the defendants excepted.

The referee awarded damages for the plaintiff, and the court ordered
judgment upon the report, to which the defendants excepted.

*Aldrich & Parsons* and *Shurtleff*, for the plaintiff.

*Ray, Drew & Jordan*, for the defendants.

Clear Stream has been a public highway for thirty-five years, suita-
ble in size and capacity for floating logs in times of freshet and high

·water, which occur, usually, spring and fall ; in other words, it is a
floatable stream or river, at certain seasons of the year, and the right
in the public exists not only to use the stream, but its banks also, to
float boats, rafts, or logs, for the purposes of trade and agriculture.
*Brown* v. *Chadbourne*, 31 Me. 9 ; *Knox* v. *Chaloner*, 42 Me. 150 ;
*Treat* v. *Lord*, 42 Me. 552 ; Angell on Highways, *c.* 1, *ss.* 53–58, and
authorities cited ; *Boissinault* v. *Olio*, Stuart (Low. Can.) 565.

The plaintiff had no lien upon, or right to detain, the defendants'
logs. No lien or right of detention is set up in the cause. Although
the defendants kept men stationed along the plaintiff's land to break
jams of logs, still, by reason of the crookedness of the stream, and
more especially by reason of the plaintiff's bridge, jams would form
there ; and the report shows that the defendants " were unable to
keep all the logs within the river banks." The defendants had the
right to go and haul the logs off with oxen or horses. It is absurd to
claim that they were bound to employ men enough to lift and carry
two hundred spruce logs, scattered over three or four acres of the
plaintiff's land (and many of them twenty rods away), to the stream.
They adopted the most practicable and expeditious method of removal,
and one altogether less injurious to the plaintiff himself than to allow
them to lay on his grass ground until they could be carried off by
hand. This freshet, and the escape of two hundred logs upon the
plaintiff's land, were unusual and extraordinary occurrences, and gave
the defendants the right to make use of unusual, and perhaps extraor-
dinary, means to reclaim their property.

The question put by the plaintiff's counsel to their client, calling for
his opinion touching the question of damages, was incompetent. The
testimony put in by the plaintiff, in regard to the use of· the dams
above the plaintiff's farm, was also incompetent. It had no possible
bearing upon the issue tried,·to wit, whether or' not the defendants
unlawfully broke and entered the plaintiff's close ; and it had a direct
tendency to prejudice the referee against the defendants. It was ad-
mitted, on the ground that the defendants' use of the dams was of
itself unlawful˝as against the plaintiff, when, as before pointed out,
the law is the other way. The report should be set aside because of
the admission of incompetent testimony, unless the court is of opin-
ion that the defendants are entitled to a judgment in their favor.

FOSTER, J. The right of the public use in American rivers and
streams depends, not upon their navigability, in the technical sense of
the term, as defined by the common law (Hall on the Sea Shore 3,
4, 13 ; *Attorney-General* v. *Chambers*, 4 DeG. M. & G. 206—the ebb
and flow of the tide is not the test), but upon their capacity for trade
and business. The public easement is not, as was formerly inferred
by our courts (*Scott* v. *Willson*, 3 N. H. 321, 325), founded upon
usage,·custom, or prescription. Any stream capable of being gener-
ally and commonly useful for some purpose of trade, and the transpor-
tation of property, whether by steamers, or sailing vessels, or oar-boats,

of rafts, is a public stream.   The facts found by the referee show that
Clear Stream is naturally capable of floating logs at some times every
year, and to a considerable extent, and that it is reasonably and sub-
stantially useful to the public for that kind of navigation.   It is there-
fore a public highway.   Lord Hale's *De Jure Maris, cap.* I, II, III;
*Royal Fishery in the River Banne,* Davies 57 ;   Angell on Highways,
*ss.* 53–75 ;   Hall on the Sea Shore 4–14 ;   *Wadsworth* v. *Smith,* 2
Fairf. 278 ;   *Brown* v. *Chadbourne,* 31 Me. 9 ;   *Moore* v. *Sanborne,*
2 Mich. 519 ;   *Rowe* v. *Granite Bridge Corp.,* 21 Pick. 344 ;   *The
Montello,* 20 Wall. 430, 442 ;   *Thompson* v. *Androscoggin Co.,* 54
N. H. 545, 548, 549.

The defendants, therefore, had the right to use the stream in a rea-
sonable and proper manner for floating their logs.   What is a reason-
able use must depend upon a variety of conditions.   If " shutting
down the gates and holding the water, and discharging it in unusual
quantities upon the drives below," was an unreasonable use of the
stream, and this unreasonable conduct " forced the logs out upon the
plaintiff's meadow," the defendants are responsible for the damage
thus occasioned.   The evidence concerning the manner of the use of
the dams was properly received.   But if the logs were cast upon
the shore not by reason of an improper use of the stream, but
by accident and without any fault of the defendants, they are not
responsible at common law for the damage thus occasioned.   Such
streams, as well as our larger rivers, will, as experience has uni-
versally shown, from their windings and the rush of their waters,
especially in times of freshets, cast floating logs upon the shore
and banks.   And the right of the public and of the defendants to
the use of this stream for the purpose of floating their logs, involves
the right of going upon the land of riparian owners for the purpose
of reclaiming the logs that may have been washed ashore.   Such inci-
dental necessity neither enlarges nor diminishes the natural capacity
of the stream, in a legal sense, nor in any way affects its public char-
acter.   This right of pursuit and reclamation rests upon the same
natural right as that which permits the owner of cattle to pursue into
an adjoining field and recover his beasts straying from the highway ;
but in the pursuit and recovery of his cattle or his logs, the owner
must do no unnecessary damage, and is responsible for any excess or
abuse of his right.   This right of reclaiming stranded logs is a com-
mon law right, a natural right, incident to the right of navigation.
Hall on the Sea Shore 43 ;   Phear on Rights of Water 52 ;   *Mayor of
Colchester* v. *Brooke,* 7 Q. B. 339 ;   *Eaton* v. *The B. C. & M. Rail-
road,* 51 N. H. 504, 530 ;   *Brown* v. *Collins,* 53 N. H. 442, 449 ;
*Thompson* v. *Androscoggin Co.,* 54 N. H. 545, 558 ;   *Treat* v. *Lord,*
42 Me. 563 ;   *Rogers* v. *Judd,* 5 Vt. 223 :   *Forster* v. *Juniata Bridge
Co.,* 16 Pa. St. 393.

Whether the plaintiff would have the right to enter upon the de-
fendants' land to recover his logs, wrongfully placed there through a
negligent or unreasonable use of the stream *(Hoit* v. *Stratton Mills,*

54 N. H. 109, 116; *Aldrich* v. *Wright*, 53 N. H. 398), is a question not raised by the case. It does not appear that any damages were given or claimed for a wrongful entry.

The plaintiff's opinion of the amount of damage sustained was properly received in evidence. Opinions concerning the value of property are admissible from witnesses found qualified to give opinions on the subject. It was competent for the plaintiff to express his opinion of the value of his land just before its invasion, and immediately after the removal of the logs, and to express an opinion obtained by the arithmetical process of subtraction. Where land is taken for railroad purposes, witnesses acquainted with the land and its value may state their opinions as to its value immediately before taking the same and immediately thereafter, and the amount of damages done to the land by such taking. *Curtis* v. *Railroad*, 20 Minn. 28; *Sherwood* v. *Railroad*, 21 Minn. 127.

The amount of the damages could be ascertained from the best accessible evidence. In the circumstances, a view would have conveyed but an unsatisfactory impression. Opinions of witnesses, derived from observation, are always admissible in evidence, when, from the nature of the subject under investigation, no better evidence can be obtained. *Hardy* v. *Merrill*, 56 N. H. 227, 241, and cases cited.

*Exceptions overruled.*

BINGHAM, J., did not sit.