THE TOWN OF PIERREPONT, Respondent, *v.* WILLIAM D. LOVELESS et al., Appellants.

Defendants, or the firms of which some of them were members, severally, cut and placed on the ice in the R. river saw-logs, to be floated down the river to their respective mills during the high water in the spring. They or their firms, severally, entered into a written contract with S. & D., by which the latter agreed to take the logs, drive them down and put them in the booms of the respective owners. Other parties also placed logs in the river to be floated down, and employed servants to drive them. The logs of all the parties mingled together were driven down, and in consequence of the negligence of those driving them, a large number lodged and formed a jam against plaintiff's bridge by which it was carried away and destroyed. It did not appear whose logs in particular did the injury. In an action to recover the damages; *held*, that S. & D. did not stand in the relation of servants to the defendants, but were contractors exercising an independent employment; and that defendants were not answerable for their negligence; also, that, in the absence of findings to that effect, it could not be held that the undertaking in itself was dangerous to third parties.

It appeared that it had been customary to float logs down the river for thirty years, and that the Legislature had recognized such use of it as lawful, by making appropriations for improving it for that purpose, and that an act was passed making it a public highway for the purpose of floating logs and lumber; *held*, that the defendants' undertaking was not unlawful; also that plaintiff could not raise the objection that the latter act was unconstitutional, because no provision was made to compensate riparian owners; that the owners alone could set up this defect when their rights were interfered with.

(Argued December 13, 1877; decided January 29, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to recover damages for the destruction of a bridge across the Racket river, in the town of Pierrepont, alleged to have been occasioned by defendants' negligence.

The facts appear sufficiently in the opinion.

*Abraham Parker*, for appellants. Plaintiff had no right of action in the subject-matter in question. (*Cornell* v. *B. & O. Tpke. Co.*, 25 Wend., 365; *Morey* v. *Town of Newfane*, 8 Barb., 645; Whart. on Neg., 956, 957; *Town of Galen* v. *C. & R. Plank Road Co.*, 27 Barb., 543; *Gailor* v. *Hereck*, 42 id., 79; *Cornell* v. *Town of Guilford*, 1 Den., 510; *Radcliffe* v. *Mayor, etc., of Brooklyn*, 4 N. Y., 195; *Bellinger* v. *N. Y. C. R. R. Co.*, 23 id., 47, 48; *Conhocton Stone Co.* v. *B. & E. R. R. Co.*, 10 N. Y. Sup. Ct. R., 523; *People* v. *Kerr*, 27 N. Y., 188; *Kelsey* v. *King*, 33 How., 39; *Malone* v. *City of Toledo*, 28 Ohio, 643.) The logs were in the control of independent contractors, and defendants could not be held liable for their negligence. (S. & R. on Neg., § 75; *Blackwell* v. *Wiswall*, 24 Barb., 355; *Norton* v. *Wiswall*, 26 id., 618; *Scheler* v. *R. R. Co.*, 38 id., 445; *Potter* v. *Seymour*, 4 Bos., 140; *Gilbert* v. *Beach*, 5 id., 445; *O'Rourke* v. *Hart*, 7 id., 511; *Boniface* v. *Relyea*, 6 Robt., 397; *Barrett* v. *Singer Mfg. Co.*, 1 Swe., 545; *City of Buffalo* v. *Halloway*, 3 Seld., 493; *Pack* v. *Mayor, etc.*, 4 Seld., 222; *Kelly* v. *Mayor, etc.*, 1 Kern., 432; *Black* v. *Ferris*, 1 Seld., 48; *Walter* v. *Ware*, 16 Wal., 566; *McCafferty* v. *S. D. & P. M. R. R. Co.*, 61 N. Y., 178; *Slater* v. *Mersereau*, 64 id., 138; *King* v. *N. Y. C. R. R. Co.*, 66 id., 181.) The Racket river, as between these parties and as to the subject-matter in controversy, is a navigable stream. (*Palmer* v. *Mulligan*, 3 Cai., 307; *Shaw* v. *Crawford*, 10 J. R., 237; *Ex parte* Jennings, 6 Cow., 518; Angell on Water-courses, §§ 546, 550; 3 Kent's Com., 558 [notes]; 1 McL., 360; 2 id., 376; *Wadsworth* v. *Smith*, 2 Fairf., 278; 3 N. H., 321; 5 Ohio, 410; *Brown* v. *Chadbourne*, 31 Me., 9; *Wadsworth* v. *Smith*, 11 id., 278; *Rowe* v. *Granite Bridge Co.*, 21 Pick., 344; *Moore* v. *Sanborne*, 2 Gibbs, 519; *Brown* v. *Scofield*, 8 Barb., 243; *Morgan* v. *King*, 18 id., 277; 30 id., 9; 35 N. Y., 454; 33 id., 461; *Lowbee* v. *Wells*, 13 How., 454; Rowal Fishery in the River Banne, Davies' R., 152–157; Hall's Jure Maris, chap. 3.)

*Leslie W. Russell*, for respondent.   Plaintiff, as a corporate body, had a right to maintain this action for an injury to its property.   (1 R. S. [6th ed.], 820, 821, 847, § 1; *Weismer* v. *Vil. of Douglass*, 64 N. Y., 105; *People* v. *Ingersoll*, 58 id., 30, 31, 32; 1 R. S. 502, § 4; 2 R. S. [6th ed.], 13, § 67; Laws 1857, chap. 615, § 1; 1 R. S. [6th ed.], 848, 849; *Hill* v. *Suprs. of Liv. Co.*, 12 N. Y., 52, 65; *People ex rel. Johnson* v. *Martin*, 62 Barb., 570; *Griffin* v. *Martin*, 7 id., 297; *King* v. *Morgan*, 35 N. Y., 454; *Gould* v. *Glass*, 19 Barb., 179; Smith's Com. on Stat., 701, § 561; Potter's Dwarris on Stat., 267.)   Plaintiff's rights were prior and superior to any right claimed by defendants of navigating the river with saw-logs, and they were liable for all damages done thereby to plaintiff's property.   (*Vandenburgh* v. *Truax*, 4 Den., 464; *Pollett* v. *Long*, 56 N. Y., 200; *Slater* v. *Mersereau*, 64 id., 138; *Creed* v. *Hartman*, 29 id., 591; *Congreve* v. *Smith*, 18 id., 79; *Jones* v. *Chantrey*, 4 T. & C., 63; *City of Buffalo* v. *Holloway*, 3 Seld., 497, 498; *Storrs* v. *City of Utica*, 17 N. Y., 105, 108; *Morgan* v. *King*, 35 id., 454; *Munson* v. *Hungerford*, 6 Barb., 256; *Curtis* v. *Keeslar*, 14 id., 511; *Bartlett* v. *Crozier*, 14 J. R., 447; *Bush* v. *Trustees, etc.*, 3 T. & C.; 409; *Barrett* v. *3d Ave. R. R. Co.*, 45 N. Y., 628; *Creed* v. *Hartman*, 29 id, 597; *Low* v. *Mumford*, 14 J. R., 426; *Chapman* v. *Bostwick*, 18 Wend., 185, 186.)

Rapallo, J.   The referee finds that, in the winter of 1866–7, the defendants, who are thirteen in number, or the several firms of which some of them were members, severally caused to be cut and placed on the ice in Racket river a large number of saw-logs, for the purpose of being floated down the river to their several mills during the high water in the spring of 1867; that on the 2d of March, 1867, they entered into a written contract with John Snell and John Douglass, by which the latter agreed to take all the logs of the respective defendants which were or should be put into the Racket river during the then present season, and drive and run them

down and deliver them in the booms of the respective parties; that they (the contractors) should drive all the logs bearing the marks of the respective defendants, both new and old logs, and should drive the said river as clean and clear of logs as ʿit had theretofore been done, not including the year 1866; that they should separate said logs at their respective booms in the usual manner, etc.; that the roll banks should be broken by the respective parties owning the same, and the logs set afloat; and that the owners of the logs should pay for the services five cents for each standard log put into the river by the respective owners, and that the logs should be delivered during the spring of 1867.

It is also found that George Richards & Co. also placed logs in said Racket river, or its tributaries, to be floated to Potsdam, and employed servants to drive them down; that the logs of all the defendants, except one, mingled together, and thus mingled during the months of April and May, were driven down the Racket river by Snell and Douglass, and men employed by them, and by men employed by Richards & Co., and a large number of them lodged and formed a jam against the bridge in question in this action, and carried away and destroyed the bridge. It is not found by whose logs in particular the injury was done, but it is found that it was caused by the negligence of the parties in charge of the drive; that a force of men was kept in the rear to pick up and keep in the channel stranded logs, and to break up and send forward any jams that should form, but no men were sent ahead to prevent jams, and none were stationed at the bridge in question to keep it clear, though four men would have been sufficient for that purpose. It is also found that logs were taken into the drive at different points along the route.

Upon this state of facts, we think the case clearly falls within the principle of *Blake* v. *Ferris* (5 N. Y., 48); *Pack* v. *The Mayor* (8 N. Y., 222), and kindred cases. Snell and Douglass did not stand in the relation of servants to the defendants or either of them. Neither of the defendants

could control their manner of performing their contract, nor
the conduct of the servants employed by them.   The defend-
ants were separately, and not jointly, owners of the logs and
contracted severally, each in respect to his own logs.   Their
liability is not increased by being joined as defendants.   If
the action could not be maintained against each separately,
it cannot against all jointly.   The contract of Snell and
Douglass was large, providing for the transportation in the
aggregate of 200,000 to 250,000 logs at five cents each, so
that their compensation alone would amount to over $10,000.
Each of the defendants owned but a comparatively small
number of these logs, and when placed in the charge of
Snell and Douglass they were wholly beyond the control of
the owners.   The absence of control was more complete
than in any of the cases on the subject; neither of the owners
had any right to interfere with the logs of the others, nor
could he separate his own.   They were all mingled together,
and the drive received further accessions on its way down
the river.   It does not appear whose logs carried away the
bridge. further than that logs of the defendants were in
the jam, but logs of other parties were also there.   There
is no principle upon which any of the defendants could be
held liable for damages done by the logs of others.   The
finding is express that the injury was caused by the negli-
gence of the parties in charge of the drive.   These parties
were, as found by the referee, Snell and Douglass, and men
employed by them.   We think they were contractors exer-
cising an independent employment, and not in any sense the
servants of the defendants or, either of them.   The case is
analogous to that of a drover who should undertake to drive
to market all the cattle in a certain neighborhood, at so
much a head, and should receive cattle on those terms from
twenty different farmers.   In case some of the cattle,
through his negligence or that of his employees, should do
injury on the way, to a third person, can it be supposed
that the owners of the cattle would be liable for such injury ?
We think not, and that the drover would not be the servant

of the owners. The very case supposed arose in England, and was decided in *Milligan* v. *Wedge* (12 Adol. & Ell., 737). The case of *King* v. *The N. Y. Central R. R.* (66 N. Y., 181), is also in point, and shows that Snell and Douglass occupied the position of contractors, and not that of servants of the defendants.

It is claimed that the defendants are liable, because, putting the logs in the river was, in itself, dangerous, and that was done by them. But there is no such finding. On the contrary, it is found that the injury was caused, not by any inherent danger inseparable from the undertaking, but by the negligence of the parties in charge of the drive. As soon as the logs were afloat, they were placed under the entire control of the contractors, and so far from the enterprise being necessarily attended with danger, the referee finds that four men stationed ahead would have been sufficient to prevent the jam at the bridge and avert the injury.

Neither was the undertaking unlawful. It appears from the findings that it had been customary to float logs down the Racket river for thirty years, and that the Legislature had repeatedly recognized such use of the river as lawful by making appropriations for improving it by removing obstructions and constructing improvements for the express purpose of allowing the passage of logs and other lumber, etc., and that in 1850 an act was passed declaring it a public highway for the purpose of floating logs and lumber. It is claimed that this latter act was unconstitutional, as it provided no compensation to riparian owners. But that objection can be set up only by such owners when their rights are interfered with. Independently, however, of that act, the law of this State recognizes the right of the public to use such streams, though private property, for rafting and floating logs, as far as necessary for public accommodation. (*Palmer* v. *Mulligan*, 3 Caines, 315; *Shaw* v. *Crawford*, 10 J. R., 237; *Ex parte Jennings*, 6 Cow., 518; *Browne* v. *Scofield*, 8 Barb., 239; *Morgan* v. *King*, 18 id., 282, and 35 N. Y., 459;

*Browne* v. *Chadbourne*, 31 Maine 9; *Moore* v. *Sanborne*, 2 Gibbs, 519.)

We conclude, therefore, that the thing contracted to be done, not being in itself unlawful, or necessarily dangerous to third parties, the owner of the property is not liable for damages arising from the negligence of the contractors or their servants in the manner of performance of their contract, but they alone are responsible for such negligence.

This conclusion renders it unnecessary to pass upon the question of the right of the town to maintain the action, which is not free from difficulty.

The judgment should be reversed, and a new trial ordered; costs to abide the event.

All concur.

Judgment reversed.