### KELLY et al. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. July 7, 1905.)

1. MUNICIPALITIES—CONSTRUCTION OF WATERWORKS—INDEPENDENT CONTRACTORS—NEGLIGENCE.

   Plaintiffs contracted with a city to dig a trench and place therein water mains, and a sewer running from a certain point to a pumping station, as part of the city's water supply system. Subsequently the city contracted with another for the making, as an essential part of the general system, of the necessary excavation, construction of the foundation walls of the pumping station, and the necessary connections with plaintiffs' work, which, under the two contracts, was to be finished first. Surface water accumulated in the excavation before it was connected with the trench plaintiffs were digging, and percolated or flowed into the same, to their damage. *Held*, that the making of the second contract was not negligence on the city's part, rendering it liable for the damage.

2. SAME—DISPOSITION OF SURFACE WATER—PARTIES RESPONSIBLE FOR—CONSTRUCTION OF CONTRACT.

   By the contract plaintiffs agreed to do all pumping and other work necessary for taking care of water that might interfere with their work, the contract providing that if water was encountered it should be the duty of the contractor at his own expense to provide all machinery, pumps, etc., necessary to keep the trench free therefrom; that plaintiffs should "pro-

vide for the flow of all sewers, drains and water courses interrupted during the progress of the work"; that the city should have the right "to connect any sewer or sewers with the sewers herein described at any time before they are finally completed"; and that all damage arising out of the nature of the work or from any unforeseen difficulties encountered in its prosecution, "or from the action of the elements, is to be sustained by the contractor." *Held*, that the contract clearly contemplated that plaintiffs were, at their own expense, to take care of all water coming into the trench or sewer, whether by percolation or through pipes and sewers.

3. SAME—INDEPENDENT CONTRACTOR.

The second contractor, having agreed to do the work according to specifications prepared in advance, and for a specified sum of money, was an independent contractor, for whose negligence, if any, in letting the water accumulate in the excavation made by him, the city was not liable.

Appeal from Trial Term, New York County.

Action by James R. F. Kelly and another against the city of New York. Judgment for plaintiffs, and defendant appeals. Reversed.

Argued before O'BRIEN, P. J., and HATCH, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Terence Farley, for appellant.
Abraham Benedict, for respondents.

McLAUGHLIN, J. The aqueduct commissioners of the city of New York, on the 20th of August, 1899, advertised for sealed proposals for "building overflow and blow-off sewers, water pipes and appurtenances in connection with the Jerome Park Reservoir of the New Croton Aqueduct * * * and particularly for a sewer on East 204th Street in said City." The plaintiffs submitted a proposal, which was accepted, and on the 18th of September, 1899, a contract was entered into between them and the aqueduct commissioners, acting for and on behalf of the city, one of the provisions of which required the plaintiffs to commence work within 10 days thereafter, and to complete the same on or before July 1 1900. Anticipating, however, that they would be unable to finish the work within the time stipulated, they, on the 23d of June, 1900, obtained an extension until November 30, 1900, on which date they obtained a second extension to June 1, 1901. The work to be done and the materials to be furnished by the plaintiffs under their contract was to dig a trench and place therein water mains and a sewer running from the easterly end of East 204th street at its junction with Mosholu Parkway south to Jerome avenue and north in Jerome avenue to a high-service pumping station, and was part of the work undertaken by the city to perfect a system of water supply made necessary by the building of Jerome Park reservoir. As a part of this system, the department of water supply, on the 26th of October, 1899, made a contract with one Gildersleeve to make the necessary excavation and construct the foundation walls for a high-service pumping station at or near one end of the work agreed to be performed by the plaintiffs, and to make the necessary connections with such work when completed. Gildersleeve agreed to commence work within 10 days after the execution of his contract. and to complete the same within 200 days thereafter (Sundays

and holidays excluded), unless delayed by the elements or the action of the other party to the contract. He did not complete his contract within the time specified, either because the plaintiffs had not completed their work, so that he could make the necessary connections, or for other reasons. In December, 1900, however, he had excavated sufficiently to, and had built the foundation and cellar walls and a sewer which extended under the bottom of the cellar the whole length of the proposed building, and then from it to what is termed "Manhole 18," the point or place on the plaintiffs' work where the pipes and sewers were to be connected. Surface water accumulated from time to time in the excavation made by Gildersleeve, and during the progress of the work carried on by him it was necessary to pump out the same. When he quit work, however, which he did for a time in December, 1900, he stopped pumping, and the surface water, or some part of it which thereafter accumulated in the cellar, either percolated through the earth or was thrown by the sewer, or both, into the trench contracted to be dug by the plaintiffs, doing them a large amount of damage, to recover which this action was brought, on the ground that it was an act of negligence on the part of the city in causing or permitting the water to accumulate in the excavation made by Gildersleeve. The particular act of negligence alleged in the complaint was that "between March 1, 1900, and January 1, 1901, the defendant caused a large excavation to be made in the earth adjacent to the aforesaid trench excavated by the plaintiffs, and carelessly and negligently connected said excavation and the plaintiffs' line of work by a sewer, pipes, and other openings with the aforesaid trench, and carelessly and negligently caused or suffered and permitted a great quantity of water to accumulate in said excavation, without taking any means to prevent said water, by percolation through the intervening bank of earth, and by flowing through the aforesaid sewer, pipes, and other openings, from flowing in large quantities into the aforesaid trench constructed by the plaintiffs." The answer put in issue the material allegations of the complaint. At the trial much evidence was offered by the respective parties bearing upon the issue involved, and at the conclusion of which the jury rendered a verdict in favor of the plaintiffs, and from the judgment entered thereon the defendant has appealed.

I am of the opinion that the judgment should be reversed. There is no basis for the claim made by the plaintiffs against the city, and the evidence does not sustain the jury's verdict. Before the plaintiffs could recover, they were obligated to show some breach of duty on the part of the defendant, either by omission or commission, and this they failed to do. It is conceded that the city has paid all it agreed to pay under the contract, but it is claimed it is liable for the damages sustained outside and independent of the contract.

The city certainly had the right to make the contract which it did with Gildersleeve. That was neither a negligent nor an unlawful act. The work to be performed under that contract was a necessary part of the general undertaking to supply the city with

water. Indeed, I do not understand that the plaintiffs claim there was any negligence in the letting of the contract itself, but their claim is based upon the fact that thereafter, and during the progress of the work carried on by Gildersleeve, water was permitted to accumulate in the excavation made by him, which was thereafter permitted or suffered to percolate or flow into the excavation made by them. If the plaintiffs had completed their work within the time stipulated, without obtaining extensions, it is quite evident they would not have been damaged. Under the two contracts, plaintiffs' work was to be finished first—evidently for the purpose of allowing Gildersleeve to make the necessary connections therewith. The fact that Gildersleeve proceeded with his contract, and had completed it, or nearly so, within the time stipulated, did not render the city liable because he did not make the connections with the sewer which the plaintiffs were constructing, inasmuch as that was impossible by reason of their not having finished their work at this point. That the plaintiffs might be injured by water either percolating through the earth, or flowing through sewers into their trench, before they had completed their work, seems to have been anticipated when the contract was made, for provisions were inserted therein by which the plaintiffs agreed "to do all pumping and do all other work necessary for taking care of the water that may interfere with the operations of construction * * *"; that "if, during the progress of any excavation on the line of this contract, water shall be encountered, it shall be the duty of the contractor, at his own cost and expense, to provide such machinery, pumps, labor, timber, and other materials as shall be necessary to maintain such excavation and to keep it free from water"; that the plaintiffs "shall provide for the flow of all sewers, drains and water courses interrupted during the progress of the work"; that the aqueduct commissioners "shall have the right to connect any sewer or sewers with the sewers herein described at any time before they are finally completed"; and "all loss or damage arising out of the nature of the work to be done under this contract or from any unforeseen or unusual obstructions or difficulties which may be encountered in the prosecution of the same, or from the action of the elements, is to be sustained by the contractor."

The contract clearly contemplated that the plaintiffs were, at their own expense, to take care of all the water that came into the sewer, whether by percolation or through pipes and sewers. O'Brien v. The Mayor, 139 N. Y. 543, 35 N. E. 323; Burnham v. City of Milwaukee, 100 Wis. 55, 75 N. W. 1014. Otherwise, there is no meaning to the words that the plaintiffs should "provide for the flow of all sewers, drains and water courses," and that the city should "have the right to connect any sewer or sewers * * * at any time" with the one which the plaintiffs had agreed to build. The rights of the parties, therefore, so far as the water in question is concerned, must be determined by the contract itself, and there are no provisions in it which obligated the city to take care of such water or prevent it flowing into plaintiff's trench. There was no negligence, as we have seen, in letting the contract to Gildersleeve,

and the water which accumulated in the excavation made by him was either a necessary consequence of his work, or else was due to his (an independent contractor's) negligence, for neither of which the city was liable. Uppington v. City of New York, 165 N. Y. 222, 59 N. E. 91, 53 L. R. A. 550; Berg v. Parsons, 156 N. Y. 109, 50 N. E. 957, 41 L. R. A. 391, 66 Am. St. Rep. 542; Engel v. Eureka Club, 137 N. Y. 100, 32 N. E. 1052, 33 Am. St. Rep. 692; Butler v. Townsend, 126 N. Y. 105, 26 N. E. 1017; Herrington v. Village of Lansingburgh, 110 N. Y. 145, 17 N. E. 728, 6 Am. St. Rep. 348; Devlin v. Smith, 89 N. Y. 470, 42 Am. Rep. 311; Kelly v. The Mayor, 11 N. Y. 432; Pack v. The Mayor, 8 N. Y. 222.

In the Uppington Case the court said:

"When, however, the city has power to let the work, and it enters into contract with competent contractors doing an independent business, who agree to furnish the necessary materials and labor, and make the entire improvement according to specifications prepared in advance, for a lump sum or its equivalent, they are not the servants or agents of the city, but are independent contractors, and the city is not liable for their negligence, even when it reserves the right to change, inspect, and supervise to the extent necessary to produce the result intended by the contract, provided the plan is reasonably safe, the work is lawful, is not a nuisance when completed, and there is no interference therewith by municipal officers which results in injury."

The facts in this case, it seems to me, bring it squarely within the rule thus laid down. Gildersleeve agreed to do the work, according to specifications prepared in advance, for a specified sum of money. No claim is made but what the plans were reasonably safe, or but what the work was lawful. It was not a nuisance, because it was authorized by law, and there was no interference with his work by any of the municipal authorities. The plaintiffs' damage was not caused by any act of the city, and the proof offered failed to establish a cause of action, for which reason the verdict is not sustained by the evidence, and the judgment and order appealed from must be reversed and a new trial ordered, with costs to appellant to abide event. All concur.