Jane A. BLABER, as Administratrix of the goods, chattels and credits of Oliver Blaber, deceased, Alexander Hasapis, Santo Azzarello and John P. Szelwach, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 17600, 17614, 17637, 17765.

United States District Court
E. D. New York.

Dec. 5, 1962.

John B. Forrest, New York City, for plaintiff Alexander Hasapis.

Harry Meisnere, New York City, for plaintiff Jane A. Blaber, as administratrix.

Jarema & Skolnik, New York City, for plaintiff John P. Szelwach.

Cornelius V. Gallagher, New York City, for plaintiff Santo Azzarello.

John B. Forrest, New York City, of counsel, for plaintiffs.

Joseph P. Hoey, U. S. Atty. for Eastern Dist. of New York, for defendant; Lawrence J. Galardi, Philip Silverman, Asst. U. S. Attys., of counsel.

BRUCHHAUSEN, District Judge.

This consolidated action was tried before the Court without a jury, solely

on the issue of liability. It comprises actions by the plaintiffs, Alexander Hasapis, Santo Azzarello and John Szelwach for damages for personal injuries and an action for damages for the death of Oliver J. Blaber. The actions arise out of explosions on July 2, 1956 in the Metallurgical Laboratory of Sylvania Electric Products, Inc., hereinafter called Sylvania, at Bayside, Long Island, New York, and are founded on the Federal Tort Claims Act.

It is not disputed that the building, housing the laboratory, and the land on which it was erected were owned by Sylvania and that the plaintiffs were employees of Sylvania.

At the time of the first explosion, as part of a closeout procedure after conclusion of an experiment, Hasapis and Azzarello were engaged in burning residual scrap thorium material in a burning hood, located on the second floor of the Laboratory. Blaber was standing near the burning hood. Szelwach was working directly underneath on the floor below. The explosion occurred when Hasapis grasped a portion of the thorium with a pair of tongs and placed it in the burning hood.

The plaintiffs contend that the Atomic Energy Commission, a Government Agency, hereinafter called the Commission, was responsible for the occurrences. The said Commission entered into a contract with Sylvania, employing it to conduct research and development work with radioactive materials and nuclear fuels, including thorium.

The statute, 42 U.S.C. § 2051 empowered the Commission to enter into such contract.

The plaintiffs contend that the work was inherently dangerous, thus casting a duty upon the defendant to supervise it, also that Sylvania was not an independent contractor and further that the defendant was under a duty to safeguard the workers at the plant.

These contentions will now be explored.

## 1. THE LEGAL STATUS OF SYLVANIA UNDER THE CONTRACT

In substance, the provisions of the contract, excepting those later mentioned, are as follows:

a. Sylvania, the contractor, shall perform the work at its Bayside plant.

b. The Commission may furnish items of material, equipment and other property to the contractor.

c. The contractor shall furnish the personnel.

d. The contractor shall be compensated on a cost plus basis.

e. The contractor shall maintain and pay for unemployment and social security for its employees, the cost whereof shall be reimbursable.

f. The contractor shall maintain a security staff and safeguard restricted data.

g. The contractor shall take all reasonable precautions in the performance of the work to protect the health and safety of the employees and of members of the public and to minimize danger from all hazards to life and property and shall comply with all health, safety and fire protection regulations and requirements, including fire reporting requirements of the Commission in lieu whereof it may order stoppage of the work.

h. The contractor shall comply with the usual labor laws.

In a leading New York case, Uppington v. City of New York, 165 N.Y. 222, 59 N.E. 91, 53 L.R.A. 550, the Court wrote:

"Independence of control in employing workmen and in selecting the means of doing the work is the test usually applied by courts to determine whether the contractor is independent or not.

\* \* \* \* \* \*

" 'To make the city liable, it must have the power to direct and control the manner of performing the very work in which the carelessness oc-

curred.' Vogel v. The Mayor, etc., 92 N.Y. 10, 18."

■ Independence in the control of the operation is the element which distinguishes an independent contractor from a mere agent of the general contractor. The Uppington case was cited with approval in Gallagher v. United States Lines, 206 F.2d 177, 2 Cir., wherein the Court held:

"Thus, a general ability to control the work in order to insure that it is satisfactorily completed in accordance with the requirements of the contract does not of itself make the hirer of an independent contractor liable for harm resulting from negligence in conducting the details of the work, e. g., Uppington v. City of New York, 165 N.Y. 222, 223–235, 59 N.E. 91, 53 L.R.A. 550. * * * The hirer 'must have the power to control the manner of performing the very work in which the carelessness occurred.' "

■ To constitute Sylvania the servant or agent of the Commission it is essential to establish that the Commission exercised "managerial responsibility" upon Sylvania. See Powell v. United States Cartridge Co., 339 U.S. 497, 70 S.Ct. 755, 94 L.Ed. 1017. The credible evidence is that Sylvania, and not the Commission, exercised managerial responsibility.

Sylvania was an independent contractor and was not the servant or agent of the Commission.

## 2. THE LEGAL STATUS OF THE COMMISSION

■ The plaintiffs assert that under the aforesaid statute, terms of the contract and in its performance, the Commission assumed a duty to Sylvania's employees, particularly that of caring for the health and safety of the workers in the plant and that the failure to perform, resulted in the accident.

The aforementioned statute, 42 U.S. C., and particularly Sections 2035, 2051 and 2201 thereof, among other things,

empowered the Commission to act as follows:

(a) To arrange to protect health, to minimize danger to life and property and to require the reporting and to permit the inspection of work performed thereunder, as the Commission may determine.

(b) To establish by rule, regulation or order such standards and instructions as the Commission may deem necessary or desirable to promote the common defense and security or to protect health or to minimize danger to life or property.

(c) To establish an inspection division for the gathering of information to show whether or not the contractors are complying with such rules and regulations.

It will be noted that these measures were not obligatory upon the Commission but were purely discretionary.

We further allude to the contract and recite additional provisions thereof, not heretofore mentioned, which are claimed to be pertinent, viz.:

(d) The work shall be under the jurisdiction of the Commission's New York operational office.

(e) The contractor shall comply with requests of the Commission relating to the emphasis or relative emphasis to be placed on the various phases of the work as concern it.

(f) The contractor shall upon request of the Commission confer with it relative to the contractor's activities and keep it advised of the progress and of the difficulties, if any.

(g) The Commission shall specify the relative priorities applicable to all categories of the work.

(h) The Commission may terminate performance.

(i) Title to all property purchased by the contractor for which it is entitled to direct reimbursement shall pass directly to the Government upon delivery.

(j) Records of the property are subject to Commission inspection. The

Commission shall have access to the premises.

(k) The Commission reserves all rights to apply for patents on inventions of Sylvania's employees.

(l) The Commission shall have the right to inspect all activities of the contractor.

(m) The contractor shall make reports to the Commission.

■■■ The retention by the Commission of the right to inspect the work being performed and to stop the work, if necessary, are not sufficient to cast liability for damages upon the hirer, the Commission. Those rights were reserved to enable the Commission to ascertain whether Sylvania fulfilled its obligations under the contract and did not obligate the Commission to direct or supervise the work. See Kirk v. United States, 9 Cir., 270 F.2d 110; Gallagher v. United States Lines, supra; Uppington v. City of New York, supra. See also, Powell v. United States Cartridge Co., supra.

■■■ The plaintiffs' claims that the Commission was under an undelegable duty to supervise the work is untenable. Such duty "applies only when the hirer controls the land where the work is being performed or has general supervision over a particular project which encompasses the work as an integral part." Galbraith v. United States, 2 Cir., 296 F.2d 631. It is undisputed that Sylvania controlled the land. The plaintiffs have not established that the Commission supervised Sylvania's employees or the work. Furthermore, as has been stated, neither the statute nor the contract required supervision by the Commission. In fact, and this is reiterated, the contract obligated Sylvania to perfect and carry out a safety program. Sylvania operated a safety division, headed by its safety engineer, Henry Grieb (Tr. 579–589). Sylvania and not the Commission exercised control over the program.

The principal claim of the plaintiffs is that the accident occurred through the failure of the defendant to promulgate and enforce proper safety regulations. The defendant, as has been stated, was not obligated to promulgate rules and regulations for the promotion of safety. The statute vested the Commission with discretion to act, i. e., "as the Commission may determine," 42 U.S.C. § 2051 (d). The Tort Claims Act exempts the Government from "[a]ny claim * * * based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty * * * whether or not the discretion involved be abused." 28 U.S.C. 2680(a). See also, Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427.

In support of the claim that the Commission failed to promulgate and enforce safety regulations, the plaintiffs urge that the Commission failed to supervise the employees, particularly Azzarello and Hasapis, to the extent of insuring that they conformed to safe practices in the burning of the thorium.

The said plaintiffs were engaged, just prior to the first explosion, in transferring a portion of the thorium powder from a receptacle to the burning hood, designed by Sylvania. As previously stated, the explosion occurred when Hasapis grasped that material with a pair of tongs and placed it in the hood. They worked under instructions from Fuhrman, Sylvania's engineer, including the instruction that only small quantities were to be burned at a time. They received no instructions from representatives of the Commission. There is no evidence of a previous explosion or explosions of similar material.

Hasapis testified that the portion he placed in the burning hood was about the size of a ping-pong ball, that it was in a lumpy or solid form and that it was unlike any material he had previously burned (Tr. 57, 68, 148, 154). The credible evidence leads the Court to conclude that the size and condition of the thorium mass and the circumstances surrounding its firing brought about the explosion and were the proximate causes

thereof. Sylvania and not the Commission was charged with and supervised this operation. Accordingly, the Commission was in no wise at fault.

The defendant is entitled to judgment. Settle findings and decree on or before December 31, 1962, on ten (10) days' notice.