**LEGAL ENVIRONMENTAL ASSIST-ANCE FOUNDATION, INC. and Natural Resources Defense Council, Inc. State of Tennessee on behalf of Tennessee Department of Health and Environment (Intervening Plaintiff)**

v.

**Donald HODEL, Secretary, United States Department of Energy and United States Department of Energy.**

No. CIV. 3–83–562.

United States District Court, E.D. Tennessee, N.D.

April 13, 1984.

Gary A. Davis, Knoxville, Tenn., Dean Hill Rivkin, Knoxville, Tenn., Barbara A. Finamore, Alan Miller, S. Jacob Scherr, Natural Resources Defense Council, Inc., Washington, D.C., and Jane L. Bloom, Natural Resources Defense Council, Inc., New York City, for plaintiffs.

Francis J. Scanlon, Deputy Atty. Gen., Nashville, Tenn., for intervening plaintiff.

Dean K. Dunsmore, U.S. Dept. of Justice, Land & Natural Resources Div., Environmental Defense Section, Washington, D.C., Jimmie Baxter, Asst. U.S. Atty., Knoxville, Tenn., and Jim Foutch, Office of Chief Counsel, Dept. of Energy, Oak Ridge, Tenn., for defendants.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

Plaintiffs allege that defendants are in violation of the Resource Conservation and Recovery Act [RCRA], 42 U.S.C. §§ 6901–6987, and the Clean Water Act [CWA][1], 33 U.S.C. §§ 1251–1376. Plaintiffs seek declaratory and injunctive relief plus the imposition of civil penalties. This case is now before the Court on cross motions for summary judgment.

Defendants are the United States Department of Energy [DOE] and the Secretary of DOE. Defendants operate the Y–12 Plant in Oak Ridge, Tennessee, pursuant to the Atomic Energy Act [AEA].[2] 42 U.S.C. §§ 2011–2284. Plaintiffs, Legal Environmental Assistance Foundation and Natural Resources Defense Council, Inc., are non-profit corporations concerned with environmental protection. Several members of these organizations reside in the Oak Ridge, Tennessee, area and the organizations have standing to bring this suit. The State of Tennessee intervened as plaintiff to protect its interest in hazardous waste and water quality regulation.

The Y–12 Plant consists of approximately 260 buildings located on 600 acres. Y–12 is primarily engaged in the fabrication and assembly of nuclear weapons com-

---

1. Also known as the Federal Water Pollution Control Act. *See* Gaba, *Federal Supervision of State Water Quality Standards Under the Clean Water Act,* 36 Vand.L.Rev. 1167, 1168 n. 3 (1983).

2. DOE is successor to many functions formerly vested with the Atomic Energy Commission. 42 U.S.C. §§ 5814, 7151.

ponents. It is an essential and unique facility in this country's system of nuclear defense. Y–12 produces a large amount of hazardous wastes containing chromium, mercury, PCBs, cadmium and other pollutants. Some of these wastes are leaked or discharged into ground water and the tributaries of the Clinch River.

The questions before the Court are: 1) Whether the Y–12 Plant is subject to the provisions of the RCRA, and 2) Whether defendants have violated the CWA by allowing unpermitted discharges of pollution at Y–12.

## RESOURCE CONSERVATION AND RECOVERY ACT

One purpose of the RCRA is "to promote the protection of health and the environment ... by ... regulating the treatment, storage, transportation, and disposal of hazardous wastes which have adverse effects on health and the environment." 42 U.S.C. § 6902. The RCRA and its accompanying regulations establish a comprehensive program for the handling of hazardous wastes. This comprehensive program is applicable to federal facilities. 42 U.S.C. § 6961. Nothing in the RCRA, however, "shall be construed to apply to (or to authorize any State, interstate, or local authority to regulate) any activity or substance which is subject to the ... Atomic Energy Act of 1954 except to the extent that such application (or regulation) is not inconsistent with the requirements of such [Act]." 42 U.S.C. § 6905(a).

Defendants oppose application of the RCRA to Y–12. They argue that application of the RCRA to Y–12 is inconsistent with the AEA for three reasons. First, the AEA precludes state regulation of activities of DOE, 42 U.S.C. § 2018, but the RCRA subject federal facilities to state regulation. 42 U.S.C. § 6961. Second, the RCRA gives the United States Environmental Protection Agency [EPA], state and local authorities the authority to set standards for waste disposal, 42 U.S.C. § 6902, yet the AEA places that authority with DOE. 42 U.S.C. § 2201(i)(3). Third, the

AEA restricts dissemination of restricted data pertaining to nuclear weapons and materials, 42 U.S.C. §§ 2014(y), 2274, 2277, but the RCRA would subject this information to public disclosure. 42 U.S.C. § 6927.

Section 271 of the AEA, 42 U.S.C. § 2018, provides that:

Nothing in this chapter shall be construed to affect the authority or regulations of any Federal, State, or local agency with respect to the generation, sale, or transmission of electric power produced through the use of nuclear facilities licensed by the [Atomic Energy] Commission: *Provided,* That this section shall not be deemed to confer upon any Federal, State, or local agency any authority to regulate, control, or restrict any activities of the Commission.

The parties are in disagreement as to whether this section prohibits any state or local regulation of Y–12 or whether it merely prohibits state and local regulations of electricity. In any event, plaintiffs assert, and defendants do not deny, that Y–12 is currently subject to federal, state and local regulations under several other environmental statutes. *See, e.g.,* National Environmental Policy Act, 42 U.S.C. §§ 4321–4347; Safe Drinking Water Act, 42 U.S.C. §§ 300f to 300j–10; Clean Air Act, 42 U.S.C. §§ 7401–7642; Clean Water Act, 33 U.S.C. §§ 1251–1376; and Toxic Substances Control Act, 15 U.S.C. §§ 2601–2629. Admittedly, none of these other environmental laws contain a provision limiting its application to consistency with the AEA. *But see* 33 U.S.C. § 1371(a) (Clean Water Act does not limit inconsistent regulations of other agencies). The fact that Y–12 is subject to other state and local environmental regulations, however, precludes the argument that state and local environmental regulation of Y–12 is inconsistent with the AEA.

■ "Federal installations are subject to state regulations only *when and to the* extent that congressional authorization is clear and unambiguous." *Environmental Protection Agency v. California ex rel. State Water Resources Control,* 426 U.S.

200, 211, 96 S.Ct. 2022, 2027, 48 L.Ed.2d 578 (1976). On the other hand, a court must give full effect to a statute unless it is in "irreconcilable conflict" with another statute. *Radzanower v. Touche Rose & Co.*, 426 U.S. 148, 155, 96 S.Ct. 1989, 1993, 48 L.Ed.2d 540 (1976). "[W]hen two statutes are capable of co-existence, it is the duty of the courts ... to regard each as effective." *Id., quoting Morton v. Mancari*, 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). The RCRA and the AEA are certainly not in irreconcilable conflict. Congress must have intended that the RCRA be at least partially applicable to facilities operated pursuant to the AEA. Otherwise 42 U.S.C. § 6905(a) would have simply excluded application of the RCRA to AEA federal facilities. Although defendants have taken the position that Y–12 is totally excluded from RCRA regulations, § 6905(a) precludes RCRA application only to the extent it is inconsistent with the AEA. Defendants' position would render § 6905(a) a nullity.

■ The RCRA provides a comprehensive program for the handling of most hazardous wastes, but expressly excludes regulation of nuclear wastes. 42 U.S.C. § 6903(27). The AEA regulates nuclear material, regardless of whether it is considered waste. 42 U.S.C. § 2014(e), (z), (aa). The Court concludes that the most reasonable reconciliation of the RCRA and the AEA is that AEA facilities are subject to the RCRA except as to those wastes which are expressly regulated by the AEA: nuclear and radioactive materials. Although it could be said this interpretation renders § 6905(a) redundant with § 6903(27), the Court believes that these two sections support one another and firmly evince Congressional intent as to the application of the RCRA.

Section 161 of the AEA, 42 U.S.C. § 2201, provides that:

In the performance of its functions the [Atomic Energy] Commission is authorized to—

. . . .

(i) prescribe such regulations or orders as it may deem necessary

. . . .

(3) to govern any activity authorized pursuant to this chapter, including standards and restrictions governing the design, location, and operation of facilities used in the conduct of such activity, in order to protect health and to minimize danger to life or property.

■ It does not appear that 42 U.S.C. § 2201(i)(3) vests DOE with exclusive authority to regulate health and safety standards in the operation of Y–12. Accordingly, the RCRA is not inconsistent with the AEA in this respect. *Cf. Blaber v. United States*, 212 F.Supp. 95 (E.D.N.Y.1962), *aff'd.*, 332 F.2d 629 (2nd Cir.1964) (DOE's authority to prescribe health and safety regulations is discretionary, not mandatory).

■ If application of the RCRA to Y–12 would require disclosure of restricted nuclear material data protected by 42 U.S.C. §§ 2014(y), 2274, 2277, this would be inconsistent with the AEA. The burden is upon defendants, however, to show that such an inconsistency would result. Nothing the Court says today should be construed to require disclosure of restricted nuclear material data, however, defendants have not shown that application of the RCRA to Y–12 would result in such disclosures. Defendants' conclusory statement that such disclosures would be required is unsupported. The Court can no more assume that the RCRA would require defendants to disclose restricted nuclear material data than it could assume that the RCRA would require private business to disclose trade secrets. If security of nuclear material data would conflict with the RCRA, defendants should apply for a Presidential exemption from the RCRA for Y–12. 42 U.S.C. § 6961. Apparently, defendants have not sought a Presidential exemption. Where DOE has not applied for a Presidential exemption, national security considerations should not be considered by the Court. *See United States v. Puerto Rico*, 721 F.2d 832, 835 n. 4 (1st Cir.1983) (inter-

preting the Clean Water Act, which has a similar Presidential exemption. 33 U.S.C. § 1333(a)).

◼ The Court concludes that application of the RCRA to Y–12 will not be inconsistent with the AEA. The restriction upon the RCRA found in 42 U.S.C. § 6961 merely clarifies the Congressional intent to exclude nuclear wastes from coverage by the RCRA. The AEA still provides exclusive regulation of nuclear wastes. Defendants acknowledge that they have neither an EPA permit, 42 U.S.C. § 6925, nor a state permit, 42 U.S.C. § 6926, for the treatment, storage or disposal of hazardous waste. Accordingly, summary judgment for plaintiffs is appropriate for their claim under the RCRA.

## CLEAN WATER ACT

◼ The goal of the CWA is to eliminate the discharge of pollutants into navigable waters. 33 U.S.C. § 1251. Except as permitted under certain exceptions, "the discharge of any pollutant by any person shall be unlawful." 33 U.S.C. § 1311(a). One exception is granted for discharges allowed by a National Pollutant Discharge Elimination System [NPDES] permit issued pursuant to 33 U.S.C. § 1342. The "discharge of a pollutant" is defined as "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. § 1362(12). "The term 'point source' means any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14). Every identifiable point that emits pollution is a point source which must be authorized by a NPDES permit. *United States v. Earth Sciences, Inc.,* 599 F.2d 368 (10th Cir.1979); 40 C.F.R. § 122.1(b)(1).

The EPA issued a NPDES permit for Y–12 in 1974 which was to expire on February 15, 1980. Since DOE made application for a renewal of this permit more than 180 days before it was to expire, the 1974 permit is still in effect. 40 C.F.R. § 122.-10(b)(2) (1979) (recodified at 40 C.F.R. § 122.21(d)(2) (1983)). This permit authorizes discharges at four points: Kerr Hollow Quarry, Rogers Quarry, New Hope Pond and Bear Creek. The parties acknowledge that at one time it was EPA policy to designate the facility boundary as the point of discharge, but that this is no longer consistent with the requirements of the CWA. Apparently the 1974 permit conforms with EPA's prior policy.

Plaintiffs claim that defendants are violating the CWA because they do not have a NPDES permit covering Y–12 discharges at four other locations: the Oil Landfarm, the S–3 ponds, the Burial Ground Oil Pond and over 200 discharge pipes into Upper East Fork Poplar Creek. It seems clear to the Court, and defendants have offered no evidence to the contrary, that these four locations are point sources that are discharging pollutants into navigable waters. Since this lawsuit was filed, DOE has submitted NPDES permit applications for many of these point sources.

◼ DOE argues that because it has a NPDES permit for Y–12, any discharge of pollution from Y–12 is not in violation of the CWA. DOE says that judicial review of the permit may only be by the appropriate Court of Appeals within ninety days after the permit was issued. 33 U.S.C. § 1369(b)(1). Plaintiffs, on the other hand, claim that they are not challenging the issuance of the 1974 permit. They construe this case as a complaint against the unlawful discharge of pollutants without a permit, which may be challenged in a citizen's suit such as this. 33 U.S.C. § 1365. The Court is inclined to agree with plaintiff's characterization of this suit. The 1974 permit does not purport to allow pollutant discharges at the Oil Landfarm, S–3 ponds, Burial Ground Oil Pond or Upper East Fork Poplar Creek. The permit allows pollutant discharges only in accordance with the limitations and conditions of the permit. Defendants have taken the position that a NPDES permit for one point source of pollution, allows many other

point sources of pollution unless someone appeals the issuance of the permit. This position is inconsistent with the remedial purpose of the CWA and the requirement that any point source of pollutant discharge be authorized by permit. 40 C.F.R. § 122.1(b)(1).

■ Defendants argue in the alternative that, if the Court determines that Y–12's NPDES permit does not authorize other pollution discharges, this Court should defer to the primary jurisdiction of the EPA and dismiss this action.

Primary jurisdiction is a common-law doctrine that enables a court to determine the appropriate timing of its own exercise of jurisdiction so that an agency sharing concurrent jurisdiction with the court over the subject matter has time to make its own findings with respect to the claims and disputes. *United States v. Western Pacific R.R.*, 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). Its objective is to encourage "proper relationships between courts and administrative agencies charged with particular regulatory duties." *Id.* at 63, 77 S.Ct. at 164. Primary jurisdiction is appropriately invoked "when a claim is cognizable in a court but adjudication of the claim: requires the special competence of administrative bodies created by Congress to regulate the subject matter. *Hansen v. Norfolk & Western Ry.*, 689 F.2d 707, 710 (7th Cir.1982).

*Illinois Hospital Association v. Illinois Department of Public Aid*, 576 F.Supp. 360 (N.D.Ill.1983). Whether several locations at Y–12 are point sources for pollution is a question within the competence of courts. *See e.g., United States v. Earth Sciences, Inc.*, 599 F.2d 368 (10th Cir.1979). Accordingly, deferal to the EPA would not be appropriate in this case.

### REMEDY

The Court concludes that defendants are in violation of the RCRA and the CWA. At this time, however, the Court will impose neither an injunction nor civil penalties upon defendants for the following reasons:

1. The Y–12 Plant is a unique and essential element of this nation's system of nuclear defense. *See Weinberger v. Romero-Barcelo*, 456 U.S. 305, 310, 102 S.Ct. 1798, 1802, 72 L.Ed.2d 91 (1983).

2. Defendants have already taken and have agreed to take steps that will reduce environmental harm caused by violations of the RCRA and the CWA.

It is therefore ORDERED that plaintiffs' motion for summary judgment be and the same hereby is granted. It is further ORDERED that defendants' motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that defendants, with all deliberate speed, file for and seek a permit for the treatment, storage and disposal of hazardous waste at Y–12. 42 U.S.C. §§ 6925, 6926. It is further ORDERED that defendants, with all deliberate speed, file for and seek a NPDES permit for any discharge of pollutants into Upper East Fork Poplar Creek, and into Bear Creek from the Burial Ground Oil Pond, the Oil Landfarm and the S–3 ponds. *See Barcelo v. Brown*, 478 F.Supp. 646, 798 (D.P.R.1979), *Affirmed in Part, Reversed in Part, Sub Nom*, 643 F.2d 835 (1st Cir.1981), *Reversed Sub. Nom.*, 456 U.S. 305, 102 S.Ct. 1798, 72 L.Ed.2d 91 (1982).

Order Accordingly.